UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Caleb and Danelle McCoy, | Case No. 15-cv-4336 (WMW/HB) |
| Plaintiffs, | |
| v. | **ORDER GRANTING PLAINTIFFS' MOTION TO COMPEL APPRAISAL** |
| American Family Mutual Insurance Company, | |
| Defendant. | |

---

This matter is before the Court on Plaintiffs' Motion to Compel Appraisal. (Dkt. 13.) On April 22, 2016, the undersigned United States District Judge heard oral argument on the Motion. For the reasons addressed herein, the Motion is granted.

## BACKGROUND

On or about June 16, 2014, Caleb and Danelle McCoy's home in Elmore, Minnesota, sustained storm damage. At all times relevant to this dispute, the McCoys' property was insured under an insurance policy ("Policy") issued by Defendant American Family Mutual Insurance Company ("American Family"). The McCoys notified American Family of the storm damage, and American Family inspected the property on June 25, 2014. One week later, American Family advised the McCoys that the estimated amount of loss was $23,706.08.

On July 25, 2014, the McCoys sent American Family an estimate that identified an additional $45,390 in loss. As a result, American Family conducted a second inspection

1

of the property on August 14, 2014. One week later, American Family advised the McCoys that, based on its second inspection, $1,219.29 would be added to American Family's previous amount-of-loss determination for the property. The following week, the McCoys notified American Family that they disagreed with American Family's amount-of-loss determination. In response, American Family directed the McCoys to the appraisal process outlined in the Policy's appraisal provision, which provides:

> **Appraisal.** If **you** and **we** fail to agree on the amount of loss, either may request an appraisal of the loss. In this event, each party will choose a competent appraiser within 20 days after receiving a written request from the other. If either party fails to select an appraiser within 20 days, the other party may, upon 5 days written notice to the failing party, make application to have a presiding judge of the district court of the county in which the loss has occurred appoint an appraiser for the failing party. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, **you** or **we** may request that the choice be made by a judge of a court of record in the state where the **insured premises** is located. The appraisers will separately set the amount of loss. If they fail to agree within a reasonable time, they will submit their differences to the umpire. Written agreement signed by two of these three will set the amount of the loss. Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraiser and the compensation of the umpire will be paid equally by **you** and **us**.

(Emphasis in original.)

On September 2, 2014, the McCoys advised American Family that their "[r]epresentative contractor will be Rick Brekke."[1] However, approximately four months later, American Family notified the McCoys that it had learned that Brekke does not

---

[1] Although the McCoys did not refer to Brekke as an "appraiser" or explicitly invoke the Policy's appraisal provision in their email to American Family, they sent the email in response to an email from American Family that expressly invited the McCoys to identify an appraiser pursuant to the Policy's appraisal provision.

2

handle appraisals. In response, the McCoys advised American Family that they would immediately begin searching for a new representative.

On April 22, 2015, Daryl Johnson notified American Family that he would represent the McCoys. Johnson provided American Family an estimate that totaled $107,942.64. However, on June 2, 2015, the McCoys withdrew their demand for an appraisal, writing:

> We are withdrawing any previous verbal or written statements that may have been understood to be a demand for an appraisal. We have not understood what you have required of us as evidenced by the people we have chosen to represent us. You have rejected them. American Family Agents don't understand either and have been little help in our understanding what was termed "the next step" following dissatisfaction with an adjustment.

Tim Black, American Family's engineering and construction consultant, inspected the McCoys' property on July 16, 2015.[2] Black prepared a written report, in which he explained that he was "unable to opine on the reported damages, as interior finish materials, which had reportedly sustained moisture damage, had either been removed or were in a state of ongoing repair/construction." According to Black's report, after the date of the original claim, the McCoys built an addition on the west side of the house and made changes to the interior structure. Black concluded that "the condition of the structure on the date of inspection prevented visual assessment of the reported damage and therefore, a scope of repair to prepare an accurate detailed cost estimate, reflecting damages solely from the reported moisture intrusion, could not be completed."

---

[2] At oral argument, American Family explained that Black is not an appraiser.

On August 24, 2015, American Family advised the McCoys via letter that it would not change its August 2014 amount-of-loss determination. In the letter, American Family asserted that it first learned of the addition to the McCoys' home during the July 16, 2015 inspection. The letter further explained that "[t]he delays incurred in the naming of an appraiser over ten months, the add-on of a major addition in the areas of the damage to the structure, and contamination of actual damages from the original wind loss, has [sic] hindered our ability to obtain an independent estimate of actual damage." Accordingly, American Family concluded that, "[a]s this is a policy coverage issue, appraisal is no longer available."

On September 1, 2015, on behalf of the McCoys, Johnson demanded an appraisal pursuant to the Policy's appraisal provision. Johnson observed that there is a disagreement between the McCoys and American Family "as to the amount of loss." American Family responded, rejecting the appraisal demand and reiterating that "this is a policy issue" that is no longer subject to the Policy's appraisal provision because the property had been altered.

The McCoys commenced this action in Faribault County District Court on November 16, 2015. Their Complaint, which alleges breach of contract and, in the alternative, breach of the implied covenant of good faith and fair dealing, seeks an order compelling American Family to comply with the Policy's appraisal provision, among other forms of relief. American Family removed the action to the United States District Court pursuant to diversity jurisdiction. On March 8, 2016, the McCoys filed the Motion presently before the Court.

4

# ANALYSIS

In their Motion, the McCoys seek an order requiring American Family to comply with the Policy's appraisal provision. As such, the McCoys seek partial summary judgment on their claim that American Family has breached the Policy by refusing to participate in the appraisal process outlined in the Policy's appraisal provision, and they seek the remedy of specific performance of the Policy's appraisal provision. *See Dewall v. Am. Family Mut. Ins. Co.*, No. 15-cv-1954, 2015 WL 5719143, at *1 (D. Minn. Sept. 29, 2015) (granting partial summary judgment in the form of compelling an appraisal pursuant to an insurance policy); *St. Panteleimon Russian Orthodox Church v. Church Mut. Ins. Co.*, No. 13-cv-1977, 2013 WL 6190400, at *3-4 (D. Minn. Nov. 27, 2013) (observing that a motion to compel appraisal under an insurance policy is a motion for partial summary judgment seeking specific performance, and analyzing it as such). Accordingly, although neither party frames the McCoys' Motion as such, the Court will analyze it as a motion for partial summary judgment, seeking specific performance of the Policy's appraisal provision.

Because this case is brought pursuant to diversity jurisdiction, the Court applies Minnesota substantive law and federal procedural law. *Hanna v. Plumer*, 380 U.S. 460, 465 (1965). Under Minnesota law, to prevail on a breach-of-contract claim, the plaintiff must prove that (1) an agreement was formed, (2) the plaintiff performed any conditions precedent to his or her demand of performance by the defendant, and (3) the defendant breached the contract. *Lyon Fin. Servs., Inc. v. Ill. Paper & Copier Co.*, 848 N.W.2d 539, 543 (Minn. 2014). When determining the meaning of a contract, a court "must

construe the contract as a whole and attempt to harmonize all clauses of the contract." *LaSociete Generale Immobiliere v. Minneapolis Cmty. Dev. Agency*, 44 F.3d 629, 636 (8th Cir. 1994) (citing *Chergosky v. Crosstown Bell, Inc.*, 463 N.W.2d 522, 525 (Minn. 1990)). Unambiguous contract terms must be given their plain and ordinary meaning. *Litton Microwave Cooking Prods. v. Leviton Mfg. Co.*, 15 F.3d 790, 796 (8th Cir. 1994) (citing *Hubred v. Control Data Corp.*, 442 N.W.2d 308, 310-11 (Minn. 1989)).

Summary judgment is proper when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the court views the facts in the light most favorable to the nonmoving party. *Shelter Ins. Cos. v. Hildreth*, 255 F.3d 921, 924 (8th Cir. 2001). Summary judgment is properly granted only when no reasonable jury could return a verdict for the nonmoving party. *Id.* The moving party bears the burden to produce sufficient evidence to establish that "there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law." *Id.*

Here, the parties disagree about whether American Family is required to comply with the Policy's appraisal provision. The McCoys argue that American Family is required to comply with the Policy's appraisal provision because the parties disagree as to the amount of loss. The McCoys seek the Court's declaration, on the record before it, that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law on their claim that American Family breached the Policy by refusing to comply with the appraisal provision. In response, American Family contends that it need not comply with the Policy's appraisal provision because (1) the conditions of the

McCoys' home have been substantially altered without notice to American Family, and (2) there are disputed coverage issues that are not appropriate for appraisal.

In determining whether American Family breached the appraisal provision in the Policy, the Court first must determine what the relevant terms of the Policy require. The Policy's appraisal provision is triggered only when the McCoys and American Family "fail to agree on the amount of loss." Here, it is undisputed that the parties fail to agree on the amount of loss. American Family determined the amount of loss to be $24,925.37 and expressly declined to modify that determination. The McCoys repeatedly have expressed their disagreement with that amount. Accordingly, the Policy's appraisal provision has been triggered. But American Family advances two arguments as to why it is not required to comply with the Policy's appraisal provision.

American Family first asserts that it is not required to comply with the Policy's appraisal provision because the McCoys substantially altered their property without first providing notice to American Family. The relevant provision of the Policy states that "[i]n the event of a loss to property that this insurance may cover, **you must**: . . . d. as often as **we** reasonably require: (1) show **us** the damaged property before permanent repairs or replacement is made." (Emphasis in original.) American Family does not argue, and the record does not reflect, that the foregoing provision establishes a condition precedent to triggering the appraisal provision in the Policy. Even if this were a condition precedent, the facts are undisputed that the McCoys showed American Family the damaged property twice in 2014 before they constructed the addition on their home and before the disagreement as to the amount of loss arose. It also is an undisputed fact

7

that American Family obtained enough information to determine the amount of loss at that time. Moreover, American Family conceded at oral argument that the Policy contains no time limit that would void American Family's obligation to comply with the Policy's appraisal provision after a disagreement over the amount of loss has arisen. Thus, the timing of the McCoys' notice to American Family regarding alterations to the McCoys' property does not relieve American Family of its obligation to comply with the Policy's appraisal provision.

American Family nonetheless argues that, even though its adjuster was able to determine the amount of loss in 2014, an appraisal will be either impossible or difficult to perform now that the McCoys have altered the property. But American Family conceded at oral argument that the Policy does not address impossibility and that no appraiser has determined that an appraisal of the McCoys' property will be impossible to perform. Indeed, the McCoys insist that an appraisal *is* possible. Thus, there is no factual basis to conclude that an appraisal will be impossible to perform.

Further, submitting a claim to an appraisal is not inappropriate merely because performing the appraisal might be difficult. *See Condos. of Shenandoah Place v. SECURA Ins.*, No. 15-cv-0165, 2016 WL 614381, at *4 (D. Minn. Feb. 16, 2016). To the contrary, one purpose of the appraisal process is to make such difficult determinations. *See id.* When questioned at oral argument, American Family could not identify any legal or contractual basis to support its refusal to participate in an appraisal based on anticipated difficulty. Moreover, American Family conceded that its appraiser has not even looked at the McCoys' property since the addition was constructed and does not

know what he will be able to observe. Accordingly, American Family has not established any basis to be relieved of its obligation to comply with the Policy's appraisal provision simply because performing an appraisal might be difficult.

American Family's second argument in support of its position that it is not required to comply with the Policy's appraisal provision is that disputed coverage issues remain. It identifies those issues as whether the McCoys' amount-of-loss calculation contains costs excluded from coverage under the Policy, such as costs relating to wear and tear and building code compliance. American Family argues that these coverage issues are not appropriate for appraisal because they are questions of law reserved for determination by a court. Under Minnesota law, "[t]he scope of appraisal is limited to damages questions while liability questions are reserved for the courts." *Quade v. SECURA Ins.*, 814 N.W.2d 703, 706 (Minn. 2012). Although appraisers have the authority to decide the amount of loss, they may not construe the insurance policy or decide whether the insurer should pay. *Id.* In addition, "there is a strong public policy in Minnesota favoring appraisals." *Id.* at 707.

In *Quade*, the Supreme Court of Minnesota examined the scope of an appraisal clause in an insurance policy that permitted either party to demand an "appraisal of the loss" if the parties failed to agree on "the amount of loss." *Id.* at 704. As is the case here, the insureds in *Quade* had submitted a claim to their property insurer for storm damage. *Id.* The insurer paid for the damages that it determined were caused by the storm, but declined to pay for other damages that it determined were caused by deterioration over a period of time and, therefore, excluded under the insurance policy. *Id.* Rather than

9

seeking an appraisal, the insureds sued the insurer for breach of contract. *Id.* at 705. The insureds argued that the appraisal clause did not apply to their claim because the parties' dispute concerned whether the damage is covered by the policy, rather than the cost of repair. *Id.* The insurer countered that coverage questions involve whether a particular event is covered, whereas questions regarding the amount of loss relate to the damage arising from the covered event and the cost to repair that damage. *Id.* at 706.

The *Quade* court concluded that the phrase "amount of loss" in an insurance policy's appraisal clause is unambiguous, and that "in the insurance context, an appraiser's assessment of the 'amount of loss' necessarily includes a determination of the cause of the loss, and the amount it would cost to repair that loss." *Id.* Although "the line between liability and damage questions is not always clear," the court explained that appraisers can separate losses caused by a covered event from excluded or preexisting conditions. *Id.* at 706-07. The *Quade* court also noted that, to the extent that the appraisers' determination "goes beyond the scope of appraisal and interprets policy exclusions, that determination is reviewable by the district court." *Id.* at 708.

Under Minnesota precedent, appraisal is warranted under the circumstances presented here. As in *Quade*, here there is a dispute about the amount of loss that necessarily includes a determination as to the cause of the loss. An appraisal panel is fully capable of allocating damages between covered losses and those losses that might not be covered because they are preexisting conditions, losses that occurred later, losses of indeterminate cause, or losses otherwise excluded from coverage under the Policy. *See Condos. of Shenandoah Place*, 2016 WL 614381 at *4. Indeed, the purpose of an

appraisal process is to provide "the plain, speedy, inexpensive and just determination of the extent of the loss." *Quade*, 814 N.W.2d at 707 (internal quotation marks omitted). Moreover, "[i]f the appraisal award is flawed because it answers questions of liability outside the scope of the appraisal process, then the award can be challenged later before the district court." *Id.* at 708.

Viewing all of the evidence in the light most favorable to American Family, it is undisputed that the parties "fail to agree on the amount of loss," which triggers the Policy's appraisal provision, and it is undisputed that American Family has refused to comply with the appraisal provision. Moreover, American Family has not identified any legal basis that would otherwise excuse it from complying with the Policy's appraisal provision. Because there is no genuine issue of material fact as to whether American Family breached the Policy's appraisal provision, partial summary judgment on the McCoys' breach-of-contract claim is warranted to the extent that the McCoys seek American Family's specific performance of the appraisal provision.

## ORDER

Based on the foregoing, and all the files, records and proceedings herein, **IT IS HEREBY ORDERED** that the McCoys' Motion to Compel Appraisal, (Dkt. 13), is **GRANTED**. American Family shall comply with the Policy's appraisal provision.

Dated: May 25, 2016
s/Wilhelmina M. Wright
Wilhelmina M. Wright
United States District Judge